**Application of Harold W. DOYLE.**
**Patent Appeal No. 9139.**

United States Court of Customs
and Patent Appeals.
Aug. 30, 1973.

Henry M. Bissell (Bissell & Dalgarn), Los Angeles, Cal., Donald D. Jeffery, Cleveland, Ohio, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of claims 1–8, 11–30, 32, 33 and 34, all the remaining claims, of appellant's application serial No. 18,727, filed March 11, 1970, for reissue of patent No. 3,391,392, issued July 2, 1968 on an application filed October 18, 1965, for "Method and Apparatus for Pattern Data Processing." We affirm.

### The Invention

The invention relates to grading garment patterns and more particularly to a system that "automatically produces data for patterns of all the desired sizes from a single reference pattern." According to the application:

A reference garment pattern is digitized and with grading control data and digital data processing methods is converted into data indicative of additional size patterns. Digital comput-

er means are provided for selectively changing the boundaries of the reference pattern according to predetermined grade instructions from grading control data to produce positional data indicative of the additional size patterns.

Figs. 1 and 2, reproduced below, illustrate, respectively, a reference pattern to be graded to provide corresponding patterns for additional sizes and "a schematic block diagram illustrating a principal aspect of the automatic grading method of the invention":

[A 7801]

The pattern 11 may be a part of a dress pattern of a reference size such as 12 from which corresponding parts for a selected range of sizes such as 6, 8, 10, 14, 16 and 18 may be produced. The pattern 11 has various control points, such as point 12, which may be marked by notches and located at corners and other key positions of the pattern 11. The points are utilized in the invention as points from which dimensional changes predetermined by the designer are applied to locate corresponding offset points on the patterns of the additional sizes.

As to Fig. 2, the application states:

[T]he reference pattern 11 of FIG. 1 is initially placed on a pattern tracer 21 which is an automatic curve follower to be described later. The tracer

21 follows the boundary of the pattern 11 including the control points 12 and 13 and provides positional incremental data based on X and Y coordinate axes to a position data converter 22. The incremental data is converted into Cartesian point data by the data converter 22 according to predetermined sequence recognition rules and, with the X–Y positional data from a significant point computer 23, is fed to a control point computer 24. The significant point computer 23 selects the Cartesian positional data from converter 22 according to maximum and minimum deviation criteria relative to the X and Y coordinate axes to provide significant point positional data indicative of the reference pattern. The control point computer 24, respon-

sive to the Cartesian positional data from the converter 22 and the significant point data from the computer 23, computes control points. A grade computer 25 computes offset intermediate point positional data for the selected additional size patterns in accordance with the computed intermediate points for the reference pattern 11. The graded positional data from the control point computer 24 are fed to a drive control 29 which drives a pattern plotter 27 to provide a graphical display of the additional size patterns 28.

No programs for the computers are set forth in the application.

At the end of the specification, appellant states that the "preferred embodiment" which he shows and describes is "susceptible to changes in form and detail" and that:

> [A]lthough the use of an incremental plotter with an incremental pattern tracer particularly enhances the operation of the system, it would be well within the knowledge of those skilled in the art to utilize other forms of plotters and curve followers, including manual curve followers * * *.

The particular operation of pattern tracer 21 and position data converter 22 of Fig. 2 is irrelevant to the basis on which we determine the appeal. The adequacy of disclosure of the pattern plotter 27 is unquestioned.

The function of the significant point computer is disclosed with respect to Fig. 15:

SIGNIFICANT POINT COMPUTER GRAPH

FIG. 15.

[A 7797]

The figure shows a portion 101 representative of the pattern 11 of Fig. 2. The input to the significant point computer 23 (Fig. 2) from the position data converter is a series of raw boundary data points such as 102 on line 101. The significant data computer analyzes these data points "to provide significant points

such as illustrated in Fig. 15 wherein significant points $P_{io}$ $P_{is1}$ $P_{is2}$ and $P_{in}$ are shown." The primary significant points $P_{io}$ and $P_{in}$ are first established. Then the secondary points $P_{is1}$ and $P_{is2}$ are determined.

The control point computer determines, from raw boundary data from position converter 22 and significant point data from the computer 23, the location of control points represented on the pattern 11 by notches as indicated in Fig. 18:

_FIG. 18._

[A 7799]

According to the application:

In the beginning, a maximum spacing test is made in which two significant points are found which are within the maximum distance allowable ($k_{max}$). After two significant points are found within the $k_{max}$ then an additional spacing test is conducted in which all points within the distance of the $k_{max}$ are established. If three or more significant points are within the $k_{max}$, then a notch is tentatively designated and a further series of tests is conducted. A base line test is conducted to find two end points 112 and 113 which represent the base line of the notch, from which is determined the midpoint M. An apex test finds the apex A, after which a line is determined from M to A as illustrated * * *.

Some further discussion of the control point computer operation is given with respect to figures of the drawing designated "flow charts."

The function of the grade computer is best discussed in connection with Fig. 9:

GRAPH ILLUSTRATING
GRADING COMPUTER

[A 7798]

There $P_o$ and $P_f$ represent control points on the pattern 11 established by the control point computer and $P_o'$ and $P_f'$ are offset points established by the grade computer by means of offset vectors $\Delta P_o$ and $\Delta P_f$ which constitute grade control data furnished thereto at 26 in Fig. 2. $P_i$ represents an arbitrary intermediate point on the pattern and $P_i'$ a corresponding intermediate offset point on the graded pattern determined by the grade computer on the basis of the triangles $P_o$ $P_i$ $P_f$ and $P_o'$ $P_i'$ $P_f'$ being similar and their corresponding sides proportional. The computer determines a plurality of such intermediate offset points between $P_o'$ and $P_f'$ to define the graded pattern.

Claims 7 and 14 are illustrative:

7. A system for grading a reference pattern to produce additional size patterns comprising:

a pattern tracer for converting the reference pattern boundary into incremental positional data based on X and Y coordinate axes;

a position data converter responsive to said tracer for converting said positional data into Cartesian point data;

a significant point computer responsive to said Cartesian point data and slope criteria relative to said X and Y coordinate axes to produce significant point data;

a control point computer responsive to said significant point data for computing control points; and

a grade computer responsive to said control points, predetermined pattern control data corresponding to said additional size patterns, and said Cartesian point data for intermediate points for computing offset control points for offset intermediate points for said additional size patterns.

14. A system for selectively changing the boundary of a reference pattern having a plurality of control points thereon to produce patterns of other sizes according to size data determining the adjustment factor of individual ones of the control points, not all of the control points being adjusted by the same factor, said system comprising:

means for converting the reference pattern boundary and control points into positional data;

means responsive to said positional data and to said size data for computing additional positional data for the adjusted control points and for the boundary of an additional size pattern graded between the adjusted control points; and

means responsive to said additional positional data for displaying the boundary of said additional size pattern.

There are other apparatus claims with scope variations and a number of method claims corresponding generally in scope to the apparatus claims.

### The Rejection

The examiner held that the position data converter 22 as well as the computers 23, 24 and 25 were inadequately disclosed, pointing specifically to deficiencies in the description of each. He also pointed out a number of apparent errors in the descriptions of their operation. As to the latter, appellant responded by offering amendments to the application. The examiner objected to certain of the amendments as new matter because "[n]o adequate basis exists in the original application for making these proposed changes."[1] Appellant then cancelled the amendments but the record does not show that he either challenged or explained the alleged errors. On the broad question of inadequacy, appellant submitted affidavits of Burger, Steele and Owen and portions of two depositions taken of adverse witnesses, Mantey and Sutton, in an infringement suit on the patent sought to be reissued.

The additional rejection of claims 2, 4, 7, 11 and 22 was based on references therein to providing or selecting significant point data according to or responsive to "slope criteria." The examiner considered those recitations inaccurate because no determination of slope of any line segment is made.

The board sustained both of these rejections. It found the affidavits and depositions "unconvincing of the level of skill in the art to deal with the problem of modifying a computer to achieve the results specified by appellant which the examiner has challenged."

### OPINION

Although appellant asserts that all of the elements of his disclosed automatic system are adequately disclosed, his argument in large part is that he has provided an adequate disclosure of what he considers an alternative form. He relies for the alternative form on the statement in his application, supra, that "it would be well within the knowledge of those skilled in the art to utilize other forms of plotters and curve followers,

1. The examiner further stated that "[s]ince the description of these figures [incorporating the alleged errors] has been one of making only a general statement of the purpose of the tests being conducted, no basis exists in the description from which these changes can be deduced."

including manual curve followers." By argument he supplements the quoted statement, advising that the term "manual" curve follower is really a misnomer because it would be more aptly described as a *semi-automatic* curve follower. Appellant states:

> Such prior art "manual" curve followers comprise a bed on which the paper with the curve to be digitized is placed. An operator superimposes a stylus over a point on the curve and operates a record button. A position data converter forming part of the tracer is connected to the stylus. Operation of the record button causes the position data converter to output the Cartesian Point coordinates of the stylus location to a key punch or tape unit which records the positional data. The operator then moves the stylus to another point on the curve and repeats the operation until sufficient points have been digitized to represent the curve. Points on the curve of a different character (such as control points) would be digitized in a manner to identify their special character, for example on a separate pass around the curve. Such operation was well within the skill of the art prior to October 1965. Such a device clearly is a "means for converting the reference pattern boundary and control points into positional data" as required by the claims.

Because of the asserted alternative disclosure, appellant's position is that, as to the broader claims, the adequacy of the disclosure of the position data converter, the significant point computer and the control point computer need not be considered. However, we find that the application provides no suggestion whatever of making sequential tracings of the pattern in order to separately digitize intermediate points and control points. In particular, there is no suggestion in the application that automatic identification of control points, provided by means including the significant point computer 23 and control point computer 24, be sacrificed and such action would be inconsistent with the emphasis placed on automatic operation throughout the specification. The most that can be found to be suggested by the brief reference to use of a manual curve follower in the specification is that it be substituted for the automatic curve follower in the described preferred embodiment with the elimination of the position data converter 22 [2] but retaining the significant point and control point computers to distinguish the control points. Hence even the broad claims which do not specify the significant point and control point computers require an adequate disclosure of them as part of the elements covered by the broad means recitations.

As to the third named computer of the disclosed apparatus, the grade computer 25, appellant does not deny its essentiality to the invention.

We agree with the examiner and the board that the disclosure of the three computers 23, 24, and 25 is not sufficient to enable any person skilled in the art to make and use the invention. 35 U.S.C. § 112. The showing of these computers amounts essentially to functionally labeled rectangles with a description of the result to be provided by the apparatus they represent. It is true that appellant sets out what he describes as algorithms, and in some instances, "flow charts" associated with these computers. However, these too are more in the form of indications of the results desired than any description of how the computers are operated to provide those results and appellant has not challenged the examiner's assertion of specific error in relation to the algorithms and flow charts.

Turning to appellant's evidence, the Mantey and Sutton evidence is in the form of excerpts from their depositions. The excerpts at most are related only to equations 24 and 25 which appellant's

---

2. We give appellant the benefit of an assumption that the "manual" curve follower which is used will provide an output of digital data representing Cartesian coordinates.

specification sets forth in connection with the operation of his grading computer. In their affidavits, Steele and Burger, experts in the data processing art, express the opinion that a typical computer programmer "supplied with no other significant information than what is disclosed in [appellant's] patent, could have prepared a program to grade patterns using the technique disclosed in said patent." Owen, a computer programmer, asserted:

> That, having been supplied with no other significant information than what is disclosed in [appellant's] patent, she did prepare a program to grade patterns using the grading algorithm disclosed in said patent during the time between November, 1964 and August, 1965. That said program was prepared for a general purpose digital computer, using conventional programming technique, and was used to grade garment patterns.

We do not consider the excerpts from the depositions, taken out of context and without revealing fully the point of the questioning, as establishing the adequacy of the disclosure of the grading process in appellant's specification. The excerpts contain no information whatever as to the significant point computer and control point computer. Hence they are wholly inadequate to demonstrate the presence of disclosure sufficient to teach one skilled in the art how to make and use the system even if, arguendo, they were considered of some significance relative to the grade computer operation.

As the board observed, the Burger and Steele affidavits merely express opinions in the form of conclusions without any facts on which the conclusions are based. They thus differ critically from the affidavits found adequate in In re Naquin, 398 F.2d 863, 55 CCPA 1428 (1968). The *Naquin* affidavits included assertions that "the average computer programmer" was familiar with subroutines "for multiplication, integra-

tion, addition, peak picking, running integration, subtraction * * *," which obviously were the very operations which the court considered to be necessary to execute Naquin's invention. In this case, affiants' assertions are directed to operations which obviously are different from mere known mathematical processes such as "integration, addition, etc." Rather the operations require comparison of various points on the pattern to determine such matters as where the curve between the digitized points is such that the tangent line thereto will change from one quadrant to another to reveal a significant point and to distinguish the notches at the control points from other significant points.

Owen does not reveal what information was available to her in preparing the program and thus the statement that she was supplied with no other *significant* information than what is disclosed in the patent is a conclusion or opinion lacking factual support. There is no basis for presuming that her information was limited to the patent application itself. Her program was prepared before the application was filed. In light of appellant's having based his principal argument on an alternative form of invention utilizing a "manual" curve follower in a manner which we hold was not disclosed in the application, Owen's reference to "a program" using "the grading algorithm disclosed in said patent" may well have been based on a similar interpretation of the application. Thus, the Owen affidavit does not cover anything more than a program for the grade computer 25, leaving the programming of the significant point computer 23 and control point computer 24 outside its scope.

Appellant's principal argument seems to be that the unpublished decision of the Board of Appeals in Ex parte Bernhart, Appeal No. 633–90 (1966), from which was taken the appeal that resulted in In re Bernhart, 417 F.2d 1395, 57 CCPA 737 (1969),[3] controls here. The

---

3. The record of the *Bernhart* case in the court contains the board decision as does appellant's brief in this appeal.

board decision there reversed a rejection for inadequate disclosure of a graphic type reproduction system for making planar representations wherein data representing a three dimensional object on a selected plane surface was determined for plotting by an automatic plotting machine. In that case, data representing the points on the three dimensional object and other instructions, including which points were or were not connected to other points, was predetermined and already produced on punched cards or magnetic tape from a manuscript. The board noted that the mathematical equations for converting this data to two dimensional form were set out and regarded the operation of a computer used to make transformations as involving no more than commonplace operations using conventional program instructions. In the present case, the significant point computer and critical point computer must calculate the data representing the characteristics of the reference pattern 11 and the record does not show the operations to be performed by them to be conventional or apparent to persons skilled in the art from appellant's disclosure.

■ Summarizing, the situation here is that the examiner advanced a reasonable basis for questioning the adequacy of the disclosure and it was incumbent on appellant to rebut that challenge. See In re Ghiron, 442 F.2d 985, 58 CCPA 1207 (1971). More specifically, the applicant had the burden of supplying adequate information from which the examiner, as well as the board and this court, could base a finding of whether the examiner's challenge was correct. Ordinarily that requires factual support as to what would be required or what was actually done in carrying out the invention, material peculiarly within the power of the applicant to provide. Despite assertions of Owen that she prepared a program to grade patterns "using the grading algorithm disclosed in [the] patent," appellant has not provided information additional to that challenged by the examiner as to how the grading was done. The opinions supplied by the evidence that was introduced are clearly not indicative that the examiner erred.

■ Appellant further argues that the fact that a patent was allowed him on the original application means that the question of sufficiency of disclosure has been determined in his favor by the Patent Office and that a policy of *res judicata* should bar a contrary holding here. However, we agree with the board that the statutory provision for reissue of patents, 35 U.S.C. § 251, by its third paragraph, dictates that the provisions applicable to applications for patents, including section 112, are applicable to reissue applications also.

For the foregoing reasons, the 112 rejection based on inadequate disclosure is sustained.

The reference in claim 7, supra, to the significant point computer as "responsive to * * * slope criteria relative to said X and Y coordinate axes" is exemplary of the subject matter in claims, 2, 4, 7, 11 and 22 which constituted the basis of their rejection as misdescriptive and failing to distinctly point out appellant's invention (35 U.S.C. § 112, second paragraph). The board noted that the term "slope" has the precise mathematical meaning of the tangent of the angle between a line and the x-axis and that appellant is concerned only with change in sign of the tangent. It thus considered it misleading to refer to "slope criteria." Appellant's response is that the claims do not require determination of the *absolute* slope. That seems to be a contention that the expression is not inaccurate. Irrespective of whether the term is inaccurate, it plainly falls short of meeting the requirement of "particularly pointing out and distinctly claiming" appellant's invention. Thus the additional rejection of claims 2, 4, 7, 11 and 22 will also be sustained.

The decision of the board is affirmed.

Affirmed.

RICH, J., concurs in the result.