**In re Chi K. DIEN, By Harmon Colors Corporation.**

**Appeal No. 81–614.**

United States Court of Customs and Patent Appeals.

June 4, 1982.
Reconsideration Denied July 29, 1982.

Earl L. Tyner, Jacksonville, Fla., for appellant.

Joseph F. Nakamura, Sol., and Harris A. Pitlick, Associate Sol., Washington, D. C., for Patent and Trademark Office.

Marvin C. Soffen and Edward A. Meilman, New York City, for intervenor.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is here on the rejection of all claims of application serial No. 877,745, filed February 14, 1978, by Harmon Colors Corporation, appellant, to reissue its U. S. Patent No. 3,342,823, granted September 19, 1967, on application serial No. 64,307 filed October 24, 1960, for "Preparation of Quinacridones." [1]

**1.** The patent was issued following this court's decision in *In re Dien*, 54 C.C.P.A. 1027, 371

F.2d 886, 152 U.S.P.Q. 550 (1967), to Chi K. Dien as assignor to Allied Chemical Corpora-

We are not now considering the merits of the rejection because the case is before us on the question of our jurisdiction to hear the appeal, which issue is raised by the contested motion of the Commissioner of Patents and Trademarks (PTO) to dismiss this appeal on the ground of lack of subject matter jurisdiction in this court because of the essential nature of this case. The motion to dismiss is granted.

In current terminology, this application is a "no defect" reissue application filed pursuant to the "Dann Amendments." In more precise legal terms, appellant filed its application for reissue pursuant only to 37 CFR 1.175(a)(4),[2] for the purpose of submitting to the PTO the claims of its issued patent together with several items of "prior art" for the purpose of having said claims reexamined in the light of said items. The application for reissue contains only the specification and claims of Patent No. 3,342,823 without change. The declaration of the reissue application, made by W. C. Parle as Vice President of Harmon Colors Corporation, is in compliance with paragraph (a)(4) of Rule 175 and with no other provision of the rule. In other words, no defect in the patent is alleged nor is any change in the patent sought. In the declaration of Mr. Parle, aside from the formal paragraphs, the listing of the several items of prior art, and the power of attorney contained therein, the significant statements read as follows:

tion and title has since been acquired by appellant. This case appears to be erroneously titled because Harmon Colors Corporation, not Dien, is the sole applicant for reissue. *See* 35 U.S.C. § 251, infra n.5, and 37 CFR 1.172. However, to prevent confusion, we continue the title of the appeal as filed.

2. § 1.175 *Reissue oath or declaration.* [Rule 175.]

(a) Applicants for reissue, in addition to complying with the requirements of the first sentence of § 1.65, must also file with their applications a statement under oath or declaration as follows:

\* \* \* \* \* \*

(4) When the applicant is aware of prior art or other information relevant to patentability, not previously considered by the Office, which might cause the examiner to deem the original patent wholly or partly inoperative or invalid, particularly specifying

THAT I have become aware of prior art relevant to patentability not previously considered by the U. S. Patent and Trademark Office which might cause the U. S. Patent and Trademark Office to deem the original Letters Patent No. 3, 342,823 wholly or partly inoperative or invalid, and which was not disclosed to the U. S. Patent and Trademark Office, and there was no deceptive intent in failing to make such a disclosure;

\* \* \* \* \* \*

THAT said prior art was not known to me prior to the issue date of U. S. patent 3,342,823, and was brought to my attention recently as support for a contention by a licensee [3] under Letters Patent No. 3,342,823 that the patent is invalid.

THAT if the U. S. Patent and Trademark Office so deems the Letters Patent No. 3,342,823 to be wholly or partly inoperative or invalid, I hereby request that Harmon Colors Corporation be permitted to amend said patent and be granted a reissue patent on the subject matter as described in the accompanying reissue application.

It will be observed from the last paragraph above quoted that any change to be made in the patent in order to justify its reissue[4] under the reissue statute, 35 U.S.C. § 251,[5] is reserved for future action, following a statement from the PTO that for

such prior art or other information and requesting that if the examiner so deems, the applicant be permitted to amend the patent and be granted a reissue patent.

3. The licensee was Sun Chemical Corporation which entered this application as a protestor citing additional evidence of unpatentability and which has filed a brief in this court as intervenor.

4. The purpose of reissue under 35 U.S.C. § 251, n.5 infra, being to correct a defect in a patent, it goes without saying that reissue of a patent in identical form with the original patent is not a possibility.

5. Section 251 reads in pertinent part:
§ 251. *Reissue of defective patents*
Whenever any patent is, through error without any deceptive intention, deemed

some reason it deems the patent to be "wholly or partly inoperative or invalid."

### Action Taken in the PTO

Harmon Colors Corporation (Harmon) filed with its "application for reissue" a "Statement of Position" and thereafter several declarations and exhibits. Sun Chemical Corporation, the licensee under the patent which had produced the prior art referred to in the Parle declaration, filed a protest pursuant to 37 CFR 1.291 arguing the unpatentability of the patent claims. The examiner issued a final rejection of all claims, relying on 35 U.S.C. §§ 102(a), 102(g), and 103, all in accordance with the usual routine of application examination. Harmon then appealed to the Board of Appeals which, with a full opinion, "affirmed the rejections of claims 1–19 under 35 U.S.C. § 102(a) and 35 U.S.C. § 103 and reversed the rejection made under 35 U.S.C. § 102(g)."

### This Appeal

Harmon took its present appeal to this court in due course and filed its record and brief. The PTO filed its brief. Sun Chemical Corporation obtained leave to intervene and filed a brief. The case was orally argued on the merits. A few days before the case was reached for argument, however, the PTO moved to dismiss, which motion we are now deciding. The parties and the intervenor were given further time to brief the motion.

This is but the first to be reached of several cases in the same posture in this court, one of which is No. 81–616, *In re Van*

*Dorn*, wherein a brief amicus curiae was filed on behalf of Van Dyk Research Corporation and SCM Corporation by their respective attorneys acting jointly. The PTO motion to dismiss in all of the cases is essentially the same and states that the PTO is in agreement with said amicus brief, a copy of which it annexes to its motion as representing its argument for dismissal, incorporating pages 6–25 of the brief "by reference" into its motion.

Appellant herein has filed a brief in opposition to the motion to dismiss and intervenor has filed a brief supporting the PTO position as well as a reply to appellant's opposition. In reaching our present decision, we have also examined all of the many briefs filed in the *Van Dorn* and other cases.

Perusal of all of these briefs on the PTO's several motions to dismiss appeals to this court reveals a most interesting turnabout by that agency which has resulted in confusion reminiscent of parts of the Mad Hatter's Teaparty in *Alice in Wonderland*.[6] The PTO introduced paragraph (a)(4) into its rule pertaining to reissue applications, treated this application as an application for a reissue patent, examined it as such, issued rejections of claims, permitted an appeal to the Board of Appeals, and the board rendered a decision affirming two of the three examiner's rejections. Having considered the *Van Dorn* amicus brief, it now argues that an application filed pursuant to Rule 175(a)(4) "is not 'an application for (reissue) patent' and appellant is not an 'applicant' * * *." Further, it says not every decision of the board is a "decision" within the stat-

---

wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

\* \* \* \* \* \*

The provisions of this title relating to applications for patent shall be applicable to appli-

cations for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.

6. "Then you should say what you mean," the March Hare went on.

"I do," Alice hastily replied. "At least—at least I mean what I say—that's the same thing, you know."

"Not the same thing a bit!" said the Hatter. "Why you might just as well say that 'I see what I eat' is the same thing as 'I eat what I see'!"

utes conferring jurisdiction on this court, that while both the examiner and the board used the term "rejection," they were not really making a rejection but "merely advising appellant of the error in the patent that might be corrected by reissue," and that "no reissue patent could ever issue regardless of what the examiner and/or the board did." In conclusion, the PTO sums up the effect of what happened within its doors as follows:

What appellant has really requested in his application filed pursuant to 37 CFR 1.175(a)(4) was an *advisory opinion* from the PTO of what *might* be done by appellant in view of the prior art not cited during the prosecution of the original patent. The PTO, through the examiner and the board, has given such an opinion. Appellant cannot validly argue that "[i]n effect [the examiner has denied] the patentability of the claims."

\* \* \* \* \* \*

The PTO has no jurisdiction over a patent once it has issued. *McCormick Harvesting Machine Co. v. Aultman*, 162 [sic, 169] U.S. 606 [18 S.Ct. 443, 42 L.Ed. 875] (1898). Thus, any opinion rendered in appellant's application filed pursuant to 37 CFR § 1.175(a)(4) can have no legal effect on the parent patent.

Appellant recognizes that this Court is an Article III Court, that it only has jurisdiction where there is a "case or controversy", and may not properly render advisory opinions. [Emphasis ours.]

Those opposing the motion to dismiss argue, of course, that the words of the statutes and rules are to be given their literal meaning and that a decision of the board reviewing the examiner's rejection of claims with which the applicant is dissatisfied is appealable to this court under 35 U.S.C. § 141.[7]

## OPINION

To recapitulate, semantics aside, the controlling facts are that: (1) the reissue application specification and claims are identical with the patent specification and claims; (2) the applicant has pointed to no error or defect in the patent and has not alleged that it is inoperative or invalid in part or in whole; (3) the examiner, with whom the PTO Board of Appeals has agreed, has given his opinion that all of the *patent* claims are invalid over prior art; (4) the patentee-applicant for reissue has as of this time made no move to amend its patent or to comply with any provision of Rule 175 other than paragraph (a)(4); and (5) the patentee asks this court, by what it assumes to be an "appeal" from a "decision" of the board, to review the opinion of the examiner, item (3) supra, as modified by the board decision.

■ On the foregoing analysis of the facts, at this juncture in the so-called reissue application, it appears to us that all that has happened is that the patentee, appearing here on the assumption it is appealing a decision by the board under 35 U.S.C. § 141, has obtained from the PTO an *advisory opinion* that the claims of its *patent* are invalid in view of prior art which it and the intervenor have submitted to the examiner. In doing this pursuant to a practice sanctioned by Rule 175(a)(4), the patentee has in no way complied with the provisions of 35 U.S.C. § 251 or the other provisions of Rule 175 so as to be entitled to examination of its application as one seeking a true reissue of its patent. Although it has now learned that the examiner does in fact "deem the patent inoperative or invalid" (Rule 175(a)(4)), it has not yet acted on that advice and we must decide the motion on the basis of the facts as they now exist.

Belated though the awakening of the PTO may be—and perhaps ours as well for want of having the issue raised before us—and viewing realistically the true nature of a "no defect reissue application," we agree with the PTO that no more than an advisory opinion has been rendered by it and no more than an advisory opinion has been brought to us by appellant for review. We are not alone in this view. In *Bally Manufacturing Corp. v. Diamond*, 629 F.2d 955,

---

**7.** Section 141 reads in pertinent part:
An applicant dissatisfied with the decision of the Board of Appeals may appeal to the

United States Court of Customs and Patent Appeals \* \* \*.

207 U.S.P.Q. 177 (4th Cir. 1980), the court, speaking through Senior Circuit Judge Phillips of the Sixth Circuit, sitting by designation, considered Bally's protested application under Rule 175(a)(4) on facts like those now before us. It characterized the proceeding as one "to obtain an advisory opinion as to the validity of his patent." It also characterized the examiner's rejection, whether based on the view the patent was valid or that the claims are unpatentable, as "purely advisory."

The fact that the PTO's alleged board "decision," which we are asked to review, is merely an advisory opinion is conclusive of our lack of jurisdiction. To review an advisory opinion would be to give one. We are a court established under Article III of the Constitution. *Glidden Co. v. Zdanok,* 370 U.S. 530, 584, 587, 82 S.Ct. 1459, 1490, 1492, 8 L.Ed.2d 671 (1962). As such, our power is constitutionally limited to the decision of "cases" and "controversies." Const. Art. III, sec. 2; *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1910). An advisory opinion by the PTO does not fit in either of those categories and we lack the power to review it. *Swingline v. Kleinert,* 55 C.C.P.A. 1486, 1489, 399 F.2d 283, 285, 158 U.S.P.Q. 341, 342 (1968), Rich, J., concurring, and authorities therein cited. A clear indication of the lack of a case or controversy, on the one hand, and the existence of a mere advisory opinion, on the other, is the indisputable fact that whether we agree or disagree with the PTO's final decision, no reissue patent will be granted, at least until the happening of future events in accordance with 35 U.S.C. § 251 which would justify it. The PTO, which enjoys special expertise in what its own procedures are and what results from them, has made this amply clear. Appellant has not *really* asked for a reissue—thus far—and is not going to get a reissue as matters now stand regardless of what we do on this appeal.

Further confirmation of the PTO's awareness that its Rule 175(a)(4) proceedings have had the effect of issuing merely advisory opinions is to be found in its final rule amendments, effective July 1, 1982, published in the Federal Register of May 19, 1982, which have the effect of repealing the "Dann Amendments." We quote from the "SUMMARY" at page 21746:

The Patent and Trademark Office is amending the rules of practice in patent cases (1) to eliminate consideration of the so-called "no defect" reissue applications * * *.

Under "Objectives," the PTO states that it is

* * * eliminating the consideration of reissue applications not initially presented to correct defects pursuant to 35 U.S.C. § 251.

At pages 21748–49, the PTO states:

* * * it is felt that the practice under paragraph (a)(4) of § 1.175 should be discontinued and paragraph (a)(4) should be cancelled.

$$* \qquad * \qquad * \qquad * \qquad * \qquad *$$

Amended § 1.175 eliminates paragraph (a)(4). Under paragraph (a)(4), the Office gave advisory opinions on patentability over additional prior art without any changes in the patent claims. The courts have generally refused to give preclusive effect to these advisory opinions. [Citations omitted.] Accordingly, in view of the implementation of patent reexamination pursuant to Pub.L.96–517 it is appropriate to discontinue the advisory opinions provided pursuant to § 1.175(a)(4). * * * "no defect" reissue applications filed after July 1, 1982 * * * will not be examined as to questions of patentability.

The motion of the PTO to dismiss this appeal for lack of jurisdiction in this court to entertain it is *granted.*

## COSTS

■ Appellant moved to assess costs against the PTO in the amount of $174.03 for the printing in the transcript of a copy of a Belgian patent, consisting of 37 pages. The circumstances were as follows: Appellant ordered a transcript of record from the PTO but inadvertently failed to include a list of references. He attempted to correct the omission in a telephone call to the PTO Solicitor, pointing out therein that the Belgian patent need not be included. No written record was made of the conversation.

The PTO delivered a record containing the Belgian patent. Appellant then ordered the entire record to be printed without inspecting it. The PTO opposes the motion, pointing out that 37 CFR 1.2 says that all business with the PTO should be in writing and also says "The action of the Patent and Trademark Office will be based exclusively on the written record in the Office." The PTO further points out that the duty of preparing and filing the transcript rests with the appellant, citing our Procedural Handbook, item 6. Our rule 5.6 imposes on appellant the duty of determining the contents of the transcript, printing, filing, and serving it. Appellant cannot charge the PTO with the expense it was put to in failing, first, to comply with PTO Rule 1.2 and, second, in failing to determine what was in the certified record before ordering it to be printed. The motion is *denied.*

DISMISSED.