989 F.2d 1202
 26 U.S.P.Q.2d 1885
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Harry M. WEISS.
 No. 92-1281.
 United States Court of Appeals, Federal Circuit.
 Feb. 8, 1993.
 
 Before RICH, MICHEL and CLEVENGER, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Harry M. Weiss appeals from the February 28, 1992 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences, Appeal No. 91-3545, affirming the examiner's rejection of claims 1-4 and 6-10 of application Serial No. 07/473,610 as being unpatentable on the ground of anticipation under 35 U.S.C. § 102(b) (1988), and affirming the examiner's rejection of claim 5 as obvious under 35 U.S.C. § 103 (1988). We reverse.
 
 DISCUSSION
 
 2
 The claimed invention relates to an athletic shoe with break-away cleats to minimize the risk of injury to the wearer by allowing the cleats to break away at a preselected level of shear failure stress. There are two versions of the invention which are set out respectively in independent claims 1 and 3. In the claim 1 version, the cleats are attached to the sole of the shoe, with a break-away means between the sole of the shoe and the cleat, so that the entire portion of each cleat is below the flat lower surface of the sole. In the claim 3 version, the cleats are attached to the sole of the shoe, with a break-away means connected to both the cleat top portion and the adjacent portion of the sole lower surface, such that a portion of the cleat may be inserted into the sole. Claim 5 depends from claim 1 and further requires that both the sole and the cleats be made of leather.
 
 
 3
 The examiner made the following rejections: Claims 1, 2, 6, 7, and 8 were rejected under section 102(b) as anticipated by United States Patent No. 3,638,337, issued to Dollar, Jr. on February 1, 1972 ("Dollar"); claims 3, 4, 9, and 10 were rejected under 102(b) as anticipated by French Patent No. 703,539, issued to Hublot on February 9, 1931 ("Hublot"); and claim 5 was rejected under section 103 as obvious over Dollar in view of United States Patent No. 1,493,858, issued to Golden on May 13, 1924. The Board affirmed all of the examiner's rejections.
 
 
 4
 The Board found, and on appeal the parties do not dispute, that claims 2, 6, 7, and 8 stand or fall with claim 1, and that claims 4, 9, and 10 stand or fall with claim 3. Because the section 103 rejection of claim 5 presupposes the correctness of the anticipation rejection of claim 1, we conclude that claim 5 also stands or falls with claim 1. Since all of the claims stand or fall with claims 1 and 3, we will limit our remaining discussion to those claims.
 
 
 5
 Appellant argues that the examiner's rejections on the ground of anticipation are improper because both claim 1 and claim 3 include a limitation requiring a means for breaking away cleats at a preselected level of force. Both Dollar and Hublot, the references relied upon, however, are directed to a shoe where the cleats are not intended to break off but to resist shearing off at any force. Furthermore, neither reference discloses any structure corresponding to the break-away means which is capable of performing that function. The Commissioner argues nevertheless that Dollar and Hublot inherently meet this claim limitation, because if a large enough level of force is applied, their cleats too will break away from the sole. The finding of anticipation thus derives from the PTO's interpretation of the limitations in claims 1 and 3, requiring a "means connected to each cleat top portion and to an adjacent portion of the sole lower surface having a preselected level of shear failure stress for causing each cleat to break-away from said sole when the shear failure stress corresponding to at least the preselected shear force is applied at an angle to said cleat."
 
 
 6
 Claim interpretation is a question of law which we review de novo. Intervet Am., Inc. v. Kee-Vet Lab., Inc., 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989). Anticipation is a question of fact which we review under the clearly erroneous standard. In re King, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986). Under section 102, anticipation can be found only if the prior art reference discloses, either expressly or under the principles of inherency, every limitation of the claim. Id.; RCA Corp. v. Applied Digital Data Sys., Inc., 730 F.2d 1440, 1444, 221 USPQ 385, 388 (Fed.Cir.), cert. dismissed, 468 U.S. 1228 (1984).
 
 
 7
 During examination, "claims are to be given their broadest reasonable interpretation consistent with the specification." In re Sneed, 710 F.2d 1544, 1548, 218 USPQ 385, 388 (Fed.Cir.1983) (emphasis added). In construing the meaning of a claim limitation, therefore, it is entirely proper to look to the specification in order to interpret what the inventor intended by the claim term. Furthermore, when the claim limitation in issue involves a means plus function clause, as in this case, proper claim interpretation requires that such a claim "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 p 6; In re Bond, 910 F.2d 831, 833, 15 USPQ2d 1566, 1568 (Fed.Cir.1990) (referring to the specification to interpret the scope of a means plus function claim when reviewing a finding of anticipation); In re Iwahashi, 888 F.2d 1370, 1375 n. 1, 12 USPQ2d 1908, 1912 n. 1 (Fed.Cir.1989) ("Section 112 p 6 cannot be ignored when a claim is before the PTO any more than when it is before the courts in an issued patent.").
 
 
 8
 The Commissioner argues that for examination purposes it is improper to read limitations from the specification into the claims. See In re Winkhaus, 527 F.2d 637, 188 USPQ 129 (CCPA 1975). Therefore, according to the Commissioner, the break-away means should be interpreted in the abstract, without reference to the specification. Under the Commissioner's interpretation, the break-away means requires only that a cleat break away when some level of force is applied, because "preselected level" is merely an indefinite variable. No intention to break away is required in the Commissioner's view.
 
 
 9
 The Commissioner's reading of the claim limitation is improperly overbroad because it expands the meaning of the claim beyond that which was intended by the inventor as set forth in the specification. See In re Sneed, 710 F.2d at 1548, 218 USPQ at 388; see also In re Iwahashi, 888 F.2d at 1375, 12 USPQ2d at 1912. The specification clearly indicates that the break-away means is an actual structural element which responds at a specific preselected level of force by causing the separation of the cleat from the sole of the shoe when that level of force is applied. The specification further defines that preselected level of force as that level of force at which the breaking away will prevent injury to the wearer during athletic exertion. Our interpretation does not improperly read limitations from the specification into the claim, because the limitation already exists in the claim and we resort to the specification only to interpret this limitation. To do otherwise would be to improperly expand the meaning of a claim term beyond that intended by the inventor as described in the disclosure. Therefore, in order to anticipate, Weiss claims the prior art references must contain some structure which performs the function of facilitating the breaking-away of the cleat from the sole when a preselected level of force is applied at an angle.
 
 
 10
 The prior art references, Dollar and Hublot, however, lack any limitation concerning a preselected level at which the cleats will break-away from the shoe. Furthermore, neither reference discloses a structure which corresponds to the break-away means limitation of the claims. Indeed, those references are inconsistent with the concept of a means for breaking-away at a preselected level of force that could be achieved through normal use, because they disclose a shoe where the cleats are designed not to break off at any normal level of force. Therefore, the prior art references relied on by the examiner necessarily do not anticipate the claimed invention.
 
 
 11
 Also, to properly interpret the break-away means limitation of claims 1 and 3, we must also consider the meaning of the term "preselected level of force." When interpreting a claim term which is ambiguous, such as "preselected level of force," we must look to the specification for the meaning ascribed to that term by the inventor. In re Zletz, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed.Cir.1989) ("When the applicant states the meaning that the claim terms are intended to have, the claims are examined with that meaning, in order to achieve a complete exploration of the applicant's invention and its relation to the prior art."); ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1580, 6 USPQ2d 1557, 1560 (Fed.Cir.1988) (an inventor may be his own lexicographer). Here, applicant has chosen the phrase "preselected level of force" as a specific limitation in the break-away means plus function element to indicate a specific level of force, determined in advance, at which the cleat will break-away. This term is further described in the specification to mean that level of force at which the cleat must break off in order to prevent injury to the wearer without breaking off during athletics involving noninjurious force levels.
 
 
 12
 The Board incorrectly interpreted this break-away means limitation, giving no effect to the term "preselected level of force," to require only that the cleat break away from the sole at some unknown large level of force not predetermined in advance. Based on this interpretation, the Board found that the prior art anticipated the claimed invention by inherency because the cleats of the Dollar and Hublot references must necessarily break off if subjected to a large enough force. This interpretation is contrary to the meaning clearly ascribed to the terms of the claim limitation by the inventor in the specification.
 
 
 13
 Furthermore, the rationale supporting the Board's finding of anticipation is faulty because it focusses on the effect of increasingly larger forces applied to the prior art cleats rather than the existence of a preselected level of force at which the break-away function is predetermined to occur. This rationale does not support a finding of anticipation by inherency. It only leads to the logical conclusion that any object will break if it is subjected to great enough force. "The mere fact that a certain thing may result from a given set of circumstances is not sufficient [to establish inherency].... [which requires that] the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function...." In re Oelrich, 666 F.2d 578, 581-82, 212 USPQ 323, 326 (CCPA 1981) (quoting Hansgirg v. Kemmer, 102 F.2d 212, 214, 40 USPQ 665, 667 (CCPA 1939)). The PTO has not established the existence in the prior art of a preselected level of force at which the breaking away function will occur.
 
 
 14
 Based on the foregoing, we conclude that the Board applied an improper claim interpretation to the break-away means limitation in claims 1 and 3. That limitation requires a means that will break-away at some particular preselected level of force. Neither Dollar nor Hublot discloses, expressly or inherently, a means to facilitate breaking away at such a preselected level of force. "The limitations which must be met by an anticipatory reference are those set forth in each statement of function." RCA, 730 F.2d at 1445 n. 5, 221 USPQ at 389 n. 5 (citing In re Mott, 557 F.2d 266, 269, 194 USPQ 305, 307 (CCPA 1977)). It follows, therefore, that the finding of anticipation of claims 1 and 3 was clearly erroneous, because there is no corresponding structure in either Dollar or Hublot to perform the break-away function of the claim limitation. As stated at the beginning of this opinion, our conclusion as to claims 1 and 3 disposes of the rejections of the remaining claims on appeal.