**In re Richard N. BENNETT.**

**Appeal No. 84–778.**

United States Court of Appeals,
Federal Circuit.

June 28, 1985.

Nies, Circuit Judge, filed concurring opinion in which Bissell, Circuit Judge, joined.

Jack R. Miller, Senior Circuit Judge, filed dissenting opinion in which Skelton, Senior Circuit Judge, and Kashiwa, Circuit Judge, joined.

Paul M. Craig, Jr., Craig & Burns, Washington, D.C., argued for appellant. With him on brief was Frederick F. Calvetti.

Henry W. Tarring, III, Associate Sol., U.S. Patent and Trademark Office, Arlington, Va., argued for appellee. With him on brief were Joseph F. Nakamura, Sol. and Jere W. Sears, Washington, D.C.

Before MARKEY, Chief Judge, FRIEDMAN, RICH, DAVIS, Circuit Judges, SKELTON, Senior Circuit Judge, BALDWIN, KASHIWA, BENNETT, MILLER,[*] Senior Circuit Judge, SMITH, NIES, NEWMAN, and BISSELL, Circuit Judges.[**]

PAULINE NEWMAN, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (Board), rejecting claims 24–39 of reissue patent application Serial No. 036,745 of Richard N. Bennett under 35 U.S.C. § 251, on the ground that a broadening reissue application that was filed within two years of the patent's issue date but was erroneously filed by the assignee could not be corrected by a declaration of the inventor filed more than two

---

[*] Judge Miller assumed senior status on June 6, 1985, but was on active status when this case was submitted.

[**] This appeal was argued before a panel consisting of Miller, *Circuit Judge*, Skelton, *Senior Circuit Judge*, and Newman, *Circuit Judge*. The court at its initiative considered the case *in banc*.

years after the patent's issue date. We reverse.

## Background

The application at bar was filed on May 7, 1979 for reissue of U.S. Patent No. 4,073,322 for a "High Speed Filling Machine" issued February 14, 1978 to National Instrument Company, Inc. as assignee of Richard N. Bennett. The invention is a machine for filling containers with fluid, which by its structure and operation is asserted to increase the filling rate substantially as compared with previously known machines. It is pertinent that the claims as issued describe a "continuously running conveyor means" and a "continuously running, in operation, conveyor belt". The reissue application introduced new claims which used the unqualified words "conveyor means". A purpose of the change to "conveyor means" was to cover intermittent as well as continuous running of the conveyor.

The application for reissue was filed fifteen months after the grant of the original patent, and was executed by Mr. Sidney Rosen as president of National Instrument Company, identifying Richard N. Bennett as the inventor. Fifteen months thereafter, hence thirty months after the original application was issued, the PTO's first Office Action informed appellant that since the reissue application sought to enlarge the scope of the claims it was required to be signed by the inventor in accordance with 35 U.S.C. § 251. A declaration by the inventor, Richard N. Bennett, was submitted. The Examiner accepted this declaration, but rejected the claims on prior art. Appellant advises that the principal purpose of the reissue application was to bring before the PTO prior art not previously considered, but raised in pending litigation.

The Board reversed the Examiner's rejections on prior art, but pursuant to 37 C.F.R. § 1.196(b) reversed the Examiner's acceptance of Bennett's substitute declaration, stating that the application as filed failed to comply with the requirements of 35 U.S.C. § 251, and that the matter was not correctable, distinguishing *A.F. Stoddard & Co., Ltd. v. Dann, Commissioner of Patents*, 564 F.2d 556, 195 USPQ 97 (D.C.Cir.1977) (Markey, C.J., sitting by designation).

The pertinent paragraphs of 35 U.S.C. § 251 provide:

[¶ 3]: The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.

[¶ 4]: No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

## I.

■ Appellant first challenges the Board's conclusion that some of the proposed reissue claims seek to enlarge the scope of the claims of the original patent. Appellant contends that the Board admitted that the difference in description of the conveyor is directed to a non-essential feature which adds no patentability to the claims, and points to the Examiner's statement that "[t]he claimed combination with an intermittent moving conveyor is not patentably distinct from the claimed combination with a continuously running conveyor". Appellant argues further that other parts of the claims were limited, so that overall the claims are not of enlarged scope.

The declaration of Mr. Rosen as president, accompanying the reissue application, stated that the original patent contained "limitations unduly restrictive" and that it "failed to cover the modified structure disclosed" in the specification. The subsequent declaration of Richard Bennett acknowledged that newly submitted claim 24 was "broader than claim 23".

■ As stated in *In re Rogoff*, 261 F.2d 601, 603–04, 120 USPQ 185, 186 (CCPA

1958), "a claim is broadened if it is broader in any respect than the original claim, even though it may be narrowed in other respects". *See also Ball Corp. v. United States,* 729 F.2d 1429, 1438, 221 USPQ 289, 296 (Fed.Cir.1984), and citations therein.

■ The Board correctly concluded that the reissue application contains broadened claims. "Conveyor means" is broader in scope than "a continuously running, in operation, conveyor belt". It is immaterial whether the claimed invention with an intermittently moving conveyor is patentably distinct from one with a continuously running conveyor, for it is plain that "conveyor means" is broader than both. We also agree with the Board that the execution of the broadening reissue application by the assignee's president instead of by the inventor did not comply with 35 U.S.C. § 251.

■ The reissue application was filed within the two-year period set in 35 U.S.C. § 251, fourth paragraph, for applications which seek to enlarge the scope of the claims. The question before us does not concern the addition of broadened claims after the two years had passed, as discussed in *In re Doll,* 419 F.2d 925, 164 USPQ 218 (CCPA 1970). The sole question is whether the defective execution of the timely filed reissue application may be corrected after those two years had passed.

The declaration accompanying the application identified Richard N. Bennett as the inventor; its flaw is that the request for reissue was signed only by an officer of the patent owner, and not also by Mr. Bennett. 35 U.S.C. § 251, third paragraph, authorizes an assignee of the entire interest in a patent to apply for a reissue to correct errors and to narrow the scope of the claims, without oath or declaration or concurrence by the inventor. Signature of the inventor is required only when the reissue seeks to enlarge the scope of the claimed invention, by analogy to the requirement that the inventor sign an original application for patent:

> The provisions of this title relating to applications for patent shall be applicable to applications for reissue....

Nevertheless Mr. Bennett, the inventor, could not have applied for the reissue on his own, whether or not the application sought broadened claims, as the signature of a representative of National Instrument Co. was a necessary part of any reissue application. 37 C.F.R. § 1.172(a).

The Board concluded that the substitute declaration by the inventor Bennett, which was filed more than two years after the grant of the original patent, could not cure the defect in the reissue application, citing the absence of statutory authorization to the PTO to correct the defect. We hold that the patent statute and judicial precedent require a contrary result.

## II.

Several provisions of the patent law enable correction of errors, to avoid jeopardizing a patent-seeker's rights and interest. 35 U.S.C. § 26, for example, provides:

> Any document to be filed in the Patent and Trademark Office and which is required by any law, rule, or other regulation to be executed in a specified manner may be provisionally accepted by the Commissioner despite a defective execution, provided a properly executed document is submitted within such time as may be prescribed.

The legislative history of this section attests that Congress had in mind the dangers that overly-rigid bureaucratic practices could and did pose for patent applicants. The House Report states that before enactment of this provision, an irregularity in a patent application could bring the application process to a halt. This could "jeopardize the date of priority of ... invention" and result in "serious repercussions, including the loss of patent rights ...." H.R. Rep. No. 1181, 88th Cong., 2d Sess. 2, *reprinted in* 1964 U.S.Code Cong. & Admin.News 2122, 2123. Note also the amendment to allow late payment of issue fees, discussed in S.Rep. 1401, 93d Cong., 2d Sess. 2, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7137, 7138, whereby 35 U.S.C. § 151 was amended to "eliminate

need for private bills seeking relief from the rigorous application of existing law".

The principle behind such remedial provisions is to allow correction of those statutory rigors for which the penalty may be excessive under the circumstances. These relief provisions attempt to strike a balance between the need for consistency in administration of a complex statute, even if consistency occasionally results in forfeiture of substantive rights, and the need for fairness, which may place on the administering body the occasional burden of exercising discretion to avoid an unjust result. The balance chosen requires continual evaluation in light of the purposes served by the statute.

It is not in the public interest to bar all possibility of legal or equitable relief, when such is sought to correct a harmless error. Thus we consider the reality of the practice at issue, guided by legislative and judicial precedent, and mindful of the interest of justice.

In *Stoddard v. Dann, supra,* the Court of Appeals for the District of Columbia Circuit applied these principles to enable correction of both an issued patent and a pending application that had mistakenly been executed by a representative of the assignee instead of by the inventor. To correct the patent, Stoddard had filed a reissue application accompanied by a declaration of the inventor to the effect that an innocent error had been made (an officer of the assignee instead of the inventor had signed the U.S. patent application); the inventor had also sought correction of the pending application. The PTO refused, stating that neither correction was authorized by statute.

The Court of Appeals reversed the PTO's decision. The court reviewed the foundations of the patent system, determined that the Constitution posed no obstacle to the corrections sought, and that "the constitutional objective of granting a patent (or a reissue patent) to the true inventor will be, and can only be, served by permitting the requested correction." 564 F.2d at 562, 195 USPQ at 102. The court observed that

35 U.S.C. § 116 contained no express prohibition against the corrections that Stoddard sought and concluded that since the parent application had been filed by an entity "capable of recognition by the PTO" there could be "no harm to the public interest in permitting the requested correction...." 564 F.2d at 565, 195 USPQ at 105.

There are striking parallels between *Stoddard* and the facts of the case at bar. Both cases involve error wherein the requirement that the application be executed by the inventor was not met, in that the applications were executed by a representative of the assignee. At issue in both cases was an invention for which a patent had already issued and the subject matter disclosed to the public, as the court in *Stoddard* said, "in accord with the constitutional objective ... even though the signature or signatures of the true inventive entity may be either incorrect or entirely absent." 564 F.2d at 565, 195 USPQ at 104.

Pertinent is the *Stoddard* court's conclusion that "[t]o permit the requested substitution of names would on this record harm no one"; and, "[t]o deny the requested correction ... would serve no useful purpose, would frustrate the constitutional objective, [and] would exalt form over substance ... all to the injury of the patent system and to him to whom it must appeal, i.e., the inventor." 564 F.2d at 564, 195 USPQ at 103–04.

In several ways Bennett's situation presents a more compelling case than that described in *Stoddard.* The *Stoddard* court allowed correction of a patent that named the assignee's representative as inventor. Bennett seeks to correct an application that named the correct inventor but was signed by the assignee's representative, for a patent which names the correct inventor. With the precedent that the former correction was permissible, surely so is the latter.

At the time *Stoddard* was decided, 35 U.S.C. § 116 read in pertinent part as follows:

Whenever a person is joined in an application for patent as joint inventor

through error, or a joint inventor is not included in an application through error, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes.

The statute made no provision for the situation which Stoddard faced. The *Stoddard* court recognized that it was addressing a situation that had "escaped specific statutory treatment." 564 F.2d at 565, 195 USPQ at 105. The court's holding was embraced in the 1982 amendment of § 116, which now reads in pertinent part as follows:

Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes.

The legislative history of this provision makes clear its remedial intent. The House Report states that the amendment to § 116 (and to § 256 for correction of issued patents) was made "to enlarge the possibilities for correcting misnamed inventive entities. As a consequence, correction would be permitted also in cases where the person originally named as inventor was in fact not the inventor of the subject matter contained in the application. If such error occurred without any deceptive intention on the part of the true inventor, the Commissioner would have the authority to substitute the true inventor for the erroneously named person." H.Rep. No. 542, 97th Cong., 2d Sess. 9 (1982) *reprinted in* 1982 U.S.Code Cong. & Admin.News 765, 773. This history is at odds with the Board's position here that *Stoddard* is not pertinent decisional law or that it must be narrowly construed. Further, remedial legislation may have retrospective effect when its purpose is corrective. This court has affirmed that "amendments under § 116 and conversion of inventorship should be liberally allowed." *Coleman v. Dines*, 754

F.2d 353, 357, 224 USPQ 857, 860 (Fed.Cir. 1985).

Recognizing that all of the provisions of a unified statute must be read in harmony, the portion of section 251 which requires that a broadening reissue application must be signed by the inventor does not mean that an error in compliance with section 251 is insulated from the remedial ruling of *Stoddard* or the statutory provisions for correction of error. The purpose of the reissue statute is to remedy errors. As stated in *Ball Corp.*, 729 F.2d at 1439 n. 28, 221 USPQ at 296 n. 28, "[r]eissue is remedial in nature and is based on fundamental principles of equity and fairness." These fundamental principles must not be forgotten in implementation of the statute.

## IV.

Bennett complains that he had no opportunity to correct the error within the two-year period, citing M.P.E.P. § 1442.03 which states that "[a]ll reissue applications ... will be taken up for action ahead of other 'special' applications; this means that all issues not deferred will be treated and responded to *immediately*" (emphasis in original). It appears however that there was intervening activity, including two protests, that may have contributed to the delay. We do not address this issue, which is mooted by our decision.

## V.

We conclude that the Board erred in refusing to allow appellant to correct the defective execution of the reissue application which was filed within the two year period of § 251, third paragraph.

REVERSED.

NIES, Circuit Judge, with whom BISSELL, Circuit Judge, joins, concurring.

I reach the same result as the majority but from a different reading of the statute. While, under § 251, a reissue application must be filed within two years and must be supported by an inventor's oath to obtain broadened claims, I read these as separable

provisions. In my view, the third paragraph of § 251 is a dispensation, not a requirement tied to the two year deadline. Further, nothing in §§ 111 or 115 requires participation in the filing of a reissue application by the inventor.

Where the PTO determines that claims are being broadened, as here, the assignee is not entitled to the *benefit* of the third paragraph of § 251. The oath required of the inventor in such cases is comparable, in my mind, to a supplemental oath by an inventor during original prosecution in instances where claims are broadened. Such oath, presumably for the purpose of assuring that the inventor does believe he invented what is claimed, does not change a filing date. On the other hand, the two year deadline for broadened reissue serves a different purpose—namely, to fix a specific time limit for filing a reissue application seeking broader claims, replacing the imprecise application of "laches." That purpose was fully satisfied by National's filing in this case. National's reissue application secured a filing date within the prescribed two year period, clearly negating laches. I see nothing in the requirement for an inventor's oath that expressly, or by necessary implication, takes that filing date away with respect to claims in a reissue application which are broader than issued claims, whether the broader claims are added during prosecution of the reissue application, as were the claims in issue in *In re Doll,* 419 F.2d 925, 164 USPQ 218 (CCPA 1970), or submitted in the reissue application as filed. In other words, I see no partial defective "execution" of a reissue application. National's reissue application was validly executed for the broader, as well as the narrower, claims presented

therein. With respect to the broader claims, a supplemental inventor's oath was required which does not change the filing date.

MILLER, Senior Circuit Judge, with whom SKELTON, Senior Circuit Judge, and KASHIWA, Circuit Judge, join dissenting.

The third paragraph of 35 U.S.C. § 251 provides as follows:

> The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.

It is clear that the board correctly ruled that the involved application was enlarged, contrary to the examiner's position that there was no patentable distinction between a "continuous" and an "intermittent" conveyor and that the language change was not the essence of the invention but merely set forth the best mode of carrying out the invention.[1] In *Ball Corp. v. United States,* 729 F.2d 1429, 1438, 221 USPQ 289, 296 (Fed.Cir.1984), this court recognized the principle (previously stated by the CCPA) that "a claim is broadened if it is broader in any respect than the original claim" even though it may be narrowed in other respects.

Appellant argues that 35 U.S.C. § 251 does not apply, because the reissue application was filed "in the name of the true inventor." However, as I read the application, it was filed in the name of "NATIONAL INSTRUMENT COMPANY, INC." (the

---

**1.** Appellant's evidence underscores an intention to broaden the scope of the original patent's claims. For example, appellant-assignee's Declaration of May 19, 1982, recites that limitations added by the examiner to the original patent were "unduly restrictive" and that "the original patent failed to cover the modified structure disclosed." Inventor-Bennett's own Declaration filed January 26, 1981, recites that—

> [O]riginal patent claim 23 had been changed by Examiner's Amendment to "a continuously

running, in operation, conveyor belt" which language is believed awkward and which has been changed ... that the aforementioned limitation added to claim 23 in the Examiner's Amendment dated October 20, 1977 is unduly restrictive ...; that claims 24–34 were added to correct the aforementioned deficiencies, claim 24 being broader than claim 23. *See In re Ruth,* 278 F.2d 729, 126 USPQ 155 (CCPA 1960).

assignee of the original patent), and signed "by Sidney Rosen, President."

Appellant says that the filing of said application was an error without deceptive intent, but I agree with the Solicitor that for an assignee to invoke the third paragraph of 35 U.S.C. § 251, while ignoring the basis for the exception (in the case of an application for reissue made by an assignee) set forth therein, and then to have the error excused, would render the provision regarding broadened claims a nullity. There is no evidence before this court rebutting the basic presumption that Congress shall not be deemed to have done a futile thing. *Markham v. Cabell,* 326 U.S. 404, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165 (1945); *Singer v. United States,* 323 U.S. 338, 344, 65 S.Ct. 282, 285, 89 L.Ed. 285 (1945); *Armstrong Co. v. Nu-Enamel Corp.,* 305 U.S. 315, 333, 59 S.Ct. 191, 200, 83 L.Ed. 195 (1938); *Anniston Manufacturing Co. v. Davis,* 301 U.S. 337, 351, 57 S.Ct. 816, 823, 81 L.Ed. 1143 (1937); *United States v. O'Driscoll,* 761 F.2d 589 (10th Cir.1985); N.J. Singer, Sutherland Stat. Const. § 45.12 (4th ed. 1984). Nor is there any evidence that appellant's error was "harmless." A mere rote recital of "form over substance" does not fill the evidence void. Nor is there anything in *any* legislative history indicating Congressional intent to permit a waiver of the provision on broadened claims. In his 1954 "Commentary on the New Patent Act" (of 1952), Part III, P.J. Federico merely says: "A new provision has been added permitting the assignee of a patent to apply for a reissue provided the reissue does not seek to enlarge the claims of the original patent."[2]

Appellant argues further that the PTO should be estopped from pursuing rejection of the reissue claims because it accepted the original reissue application and gave it a filing date and serial number; also, because it violated section 1442 of the Manual of Patent Examining Procedure which directs that reissue applications be taken up "special" and issues be treated immediately.[3] Assuming that these points establish an equitable argument, the short answer is that the PTO cannot deliberately or inadvertently waive the clear requirements of the statute. Appellant cites *A.F. Stoddard & Co. v. Dann, Commissioner,* 564 F.2d 556, 195 USPQ 97 (D.C.Cir.1977), as precedent for "interstitial legislation" (the involved statute, 35 U.S.C. § 116, neither authorized nor prohibited the conversion of inventorship there in issue), arguing that 35 U.S.C. § 251 "does not clearly prohibit the submittal of a declaration by the inventor in a reissue application, originally filed by the assignee, if it is determined subsequently that a claim is of 'broadened' scope." However, the third paragraph of section 251 clearly prohibits *broadened claims* in a reissue application filed by an assignee.

Appellant contends that reissue statutes, being remedial, "should be construed liberally," and (in effect) that a declaration filed by the inventor on January 26, 1981, more than two years after issuance of the original patent on February 14, 1978, should *nunc pro tunc* cure its reissue application. However, no amount of "liberalism" can justify disregard of the plain meaning of the statute. I do not regard *In re Doll,* 419 F.2d 925, 164 USPQ 218

---

**2.** Reference to 35 U.S.C. §§ 26, 116, and 256 as "remedial provisions" is not helpful. Section 26 was intended to eliminate a problem of the Patent and Trademark Office resulting from defective oaths, such as "failure to authenticate the notary's authority, and the omission or incompleteness of the date of execution." H.R.Rep. No. 1181, 88th Cong., 2d Sess. 2, *reprinted in* 1964 U.S.Code Cong. & Ad.News 2123. Section 116 has to do with inventors—not assignees. Section 256 relates to issued patents. All provide only that the Commissioner "may" take remedial action. There is no evidence that appellant's violation of section 251 was "of a mi-

nor character" or "harmless error." It is not for this court to "correct" a statute "in the public interest." That is the province of Congress.

**3.** Appellant complains of an "unexplained delay" by the PTO of fifteen months between filing of the reissue application and the first Office Action and asserts that if the PTO had acted promptly a substitute declaration could have been filed within the two-year period. However, appellant does not indicate that he or the assignee made any effort to expedite action.

(CCPA 1970), as precedent to the contrary since that case concerned a correctly filed reissue application and the subsequent addition of broadened claims. The court simply held that the language "applied for" in the fourth paragraph of 35 U.S.C. § 251 refers to filing of an application for reissue and did not prohibit the addition of broadened claims to the correctly filed application.

The decision of the PTO should be affirmed.