**In re Joseph W. KEIL.**

**Appeal No. 86–616.**

United States Court of Appeals, Federal Circuit.

Jan. 8, 1987.

---

Richard A. Killworth, Killworth, Gottman, Hagan & Schaeff, Dayton, Ohio, argued for appellant. With him on the brief was Timothy W. Hagan. Also on the brief was Robert L. McKellar, Dow Corning Corp., Midland, Mich., of counsel.

Fred E. McKelvey, Deputy Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and John C. Martin, Associate Sol.

Before BALDWIN, Senior Circuit Judge,* NEWMAN and ARCHER, Circuit Judges.

BALDWIN, Senior Circuit Judge.

The United States Patent and Trademark Office Board of Patent Appeals and Interferences decision affirming an examiner's rejection of a reissue application under 35 U.S.C. § 251 is dismissed.

The patentee has sought reissue of a patent without change to its text. This case is governed by *In re Dien*, 680 F.2d 151, 214 USPQ 10 (CCPA 1982), which held a reissue application under the Dann Amendments, 37 C.F.R. § 1.175(a)(4),** repealed effective July 1, 1982, is merely a request for an advisory opinion because it does not contemplate a change in either the patent specification or claims. As we are bound by that precedent, we must *dismiss* this appeal for lack of jurisdiction.

DISMISSED.

\* \* \* \* \* \*

---

\* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

\*\* Section 1.175(a)(4) reads as follows:

§ 1.175 *Reissue oath or declaration.* [Rule 175.]

(a) Applicants for reissue, in addition to complying with the requirements of the first sentence of § 1.65, must also file with their applications a statement under oath or declaration as follows:

(4) When the applicant is aware of prior art or other information relevant to patentability, not previously considered by the Office, which might cause the examiner to deem the original patent wholly or partly inoperative or invalid, particularly specifying such prior art or other information and requesting that if the examiner so deems, the applicant be permitted to amend the patent and be granted a reissue patent.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent.

A reissue application filed in accordance with the reissue statute [1], fully meeting the requirements thereof, cannot be converted into a "Dann Amendment", "no defect" application by judicial fiat, or even by footnote to the decision of the PTO Board of Patent Appeals and Interferences, thus automatically—as this court holds—removing the possibility of judicial review.

Keil filed a reissue application because a patent had issued to another person, Godlewski, claiming apparently identical subject matter. Keil requested an interference between his reissue application and the Godlewski patent—the interference that the PTO had erroneously failed to declare while these patents were copending. 35 U.S.C. § 135(a) authorizes an interference between an issued patent and a pending application:

> Whenever an application is made for patent which, in the opinion of the Commissioner, would interfere with ... any unexpired patent, an interference may be declared ...

and 35 U.S.C. § 251, paragraph 3, provides that:

> The provisions of this title relating to applications for patent shall be appliable to applications for reissue of a patent....

The PTO did not easily accept the proffered reissue oath in which Keil averred that the error to be corrected was that of the PTO, not the applicant, but after several tries the examiner accepted Keil's statement that:

> The United States Patent and Trademark Office appears to have errored [sic] in issuing U.S. Patent 4,076,695 ...;

> \*   \*   \*   \*   \*   \*

that applicant believes that his patent may be wholly or partly inoperative or invalid by reason of the patentee claiming more or less than he had a right to claim in the patent because patentee may or may not be the inventor of the subject matter claimed therein; that this error arose without any deceptive intent on the part of the applicant ...

followed by his request that

> the Examiner should now reexamine the situation to consider whether or not said U.S. Patent 4,076,695 should have issued in view of U.S. Patent 4,220,727 and/or whether or not an interference proceeding should be declared with applicant's Claim 1 as the count of the interference.

Keil thus presented the PTO with the opportunity to correct its error, and indeed the PTO has a public obligation to do so. Keil too is entitled to such correction, in order to remove the cloud on his patent that was placed there when the PTO issued a second patent, of earlier filing date, claiming the same invention. *See In re Willingham*, 282 F.2d 353, 354–55, 127 USPQ 211, 214 (CCPA 1960) ("The reissue provisions ... are based on fundamental principles of equity and fairness and should be so applied to the facts in any given case that justice will be done both to the patentee and to the public.") 35 U.S.C. § 101 requires that only one patent be issued for an invention, and section 102(g) requires that the patent be issued to the first inventor unless such person has abandoned, suppressed or concealed the invention.

Keil duly proceeded to take the requisite first step provided by the PTO rules when a patent applicant seeks to contest priority with an issued patent. Keil filed documents under Rule 204(c), 37 C.F.R. § 1.204(c) (amended and renumbered as 37 C.F.R. § 1.608(b) (1985)), for the purpose of

---

**1.** 35 U.S.C. § 251. *Reissue of defective patents:* Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent....

establishing a prima facie case of priority as against the filing date of the interfering patent. The PTO refused to entertain Keil's attempt to proceed under Rule 204(c), by a creative maneuver no longer at issue in view of the majority's judgment that this court is without jurisdiction of the merits. I thus limit my remarks to the aptness of the majority's reliance on *In re Dien,* 680 F.2d 151, 214 USPQ 10 (CCPA 1982), to oust this court of appellate jurisdiction.

In *In re Dien* the Court of Customs and Patent Appeals responded to the then recently enacted "Dann Amendments", which authorized an applicant to file a reissue application without stating his own belief that the underlying patent was inoperative or invalid, but instead stating that new prior art "might cause the examiner to deem the original patent wholly or partly inoperative or invalid". 37 C.F.R. § 1.175(a)(4). This "no defect" procedure enabled examination based on prior art that had not previously been before the PTO. The CCPA ruled in *Dien* that the PTO decision in such case was "purely advisory", and thus not reviewable on appeal. *In re Dien,* 680 F.2d at 155, 214 USPQ at 14.

To obtain such "no defect" advice was not Keil's purpose, and he did not file a "no defect" oath or request a "no defect" examination.

Keil did not amend his claims, as he might have done in order to copy the claim of the interfering patent in haec verba, or even in phantom verba. Instead, Keil requested that his Claim 1 be the interference count. I do not speculate on whether such an amendment would have affected the court's conclusion on the applicability of *Dien,* and remark only that the reissue statute does not require that the claims be changed; it requires that there have been error, and provides a mechanism for correcting the error.

This court and its predecessor have consistently recognized that the purpose of the reissue statute is liberally to enable the correction of errors. *See In re Bennett,* 766 F.2d 524, 528, 226 USPQ 413, 416 (Fed. Cir.1985) ("Reissue is remedial in nature"). See also *A.F. Stoddard & Co. v. Dann,* 564 F.2d 556, 195 USPQ 97 (D.C.Cir.1977), in which the court permitted correction of an error in inventorship without any change in the claims.

The reissue statute does not prescribe or limit whose errors can and can not be corrected, and it does not prohibit a reissue applicant from entering into interference proceedings before the PTO. By the court's ruling today Keil is denied judicial review of the PTO's treatment of his reissue application, and any further attempt to resolve the issue of priority of invention—an issue the PTO did not reach—must be taken to federal court, as Keil is authorized to do by 35 U.S.C. § 291.[2] But that remedy is not exclusive.

The highly technical rules of priority contests, the scientific expertise needed to understand the polymer chemistry of the subject inventions, the arcana of corroboration and diligence and reduction to practice, are the soul and substance of the administrative agency. The correct place to determine priority of invention in the first instance is the PTO. When failure to have done so was entirely due to PTO error, Keil is entitled to invoke the statutory procedures for correction of error.

In the 1930's the Court of Customs and Patent Appeals held that "no right to a reissue of a patent may be predicated upon the failure of the Patent Office to declare an interference." *In re Bostwick,* 102 F.2d 886, 888, 41 USPQ 279, 281 (CCPA 1939); *In re Guastavino,* 83 F.2d 913, 916, 29 USPQ 532, 535 (CCPA 1936). These cases do not override the 1952 Patent Act, section 251 of which contains no such limitation. P.J. Federico in his *Commentary* referred to the liberalized reissue provision

---

**2.** 35 U.S.C. § 291. *Interfering patents.* The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part. The provisions of the second paragraph of section 146 of this title shall apply to actions brought under this section.

of section 251, and stated that "there will be little or no use for section 291", which had previously been used primarily to effect cancellation of claims in an issued patent *after* an adverse decision in an interference. *Federico, Commentary on the New Patent Act,* 35 U.S.C.A. 1, 43–44, 57 (West 1954). Section 291 was not intended to provide a forum for an initial priority determination in federal court, bypassing the PTO.

It is a denial of responsibility now to reclassify this case as a "no defect" reissue application. Meanwhile, both Keil's patent and the interfering patent are wasting, encumbered by this cloud. Both the PTO and this court have, I sadly report, shirked their assignments.